JAMES A. HERMAN et al., Appellees, v. HAROLD N. STURGEON, Superintendent of Public Safety, Appellant.

No. 45231.

AUGUST 6, 1940.

Fred Free and Everett Waller, for appellees.

Ralph W. Crary, Virgil DeWitt, and Herman Slotsky, for appellant.

BLISS, J.—Sioux City, Iowa, is a city of the first class operating under the commission form of government. Among its municipal officials is a duly qualified Civil Service Commission operating under the provisions of chapter 289 of the Iowa Code. Prior to April 8, 1939, the commission, in compliance with what is now section 5696.1 of that chapter of the 1939 Code, by posting and newspaper publication, gave notice that it would hold a promotional competitive examination open to members of the city fire department to determine the qualifications of any applicants to the position of lieutenant in that department. This section provides that the "examinations shall be practical in character, and shall relate to such matters as will fairly test

the ability of the applicant to discharge the duties of the position to which he seeks promotion."

The written examinations were held on April 8, 1939, and among the members of the department who took part were the three plaintiffs and John J. Corcoran. Each of the plaintiffs is an honorably discharged soldier or sailor of the United States and within the purview of chapter 60 of the Iowa Code—the "Soldiers Preference Law." Corcoran was not such a service man. Since the commencement of this action, the plaintiff McNally received a promotion and no longer asks for relief. Sometime after the written examination, the commission gave the applicants what is termed an "adaptability test". This was an oral examination and was given on June 28, 1939, although plaintiff Herman, who was on his vacation on that date, took this last test on July 7, 1939. The "adaptability test" is made up from a special sheet which relates to the appearance, manner, and temperament to determine whether those examined are fitted for the particular position sought.

Under section 5698 the commission, on July 7, 1939, notified the mayor and city council in writing of the result of the examinations, with the names of the ten having qualified with the highest standings. They were listed in the order of their standing, with the one having the highest standing named first, and the others following in the order of their rating, with the one having the lowest standing of the ten named last, all as provided by said Code section. The list of ten for each position subject to civil service thus certified shall be the preferred roster from which all vacancies in that particular office or position shall be filled for the following two years, or until the next examination and certification. As there were thirteen lieutenants in the department it is apparent that there might be a number of vacancies within the two-year period. On the preferred list of eligibles for the position of lieutenant that was certified on July 7, 1939, the plaintiff Herman was first on the list, the plaintiff Koppen was third, McNally was fourth and Corcoran was ninth. Herman, Koppen, and McNally were the only ones entitled to preference as soldiers on the list.

Under the legislation then in effect, which is now section 5699.2 of the 1939 Code, the defendant, as Superintendent of Public Safety, was authorized to make this appointment, with the approval of the city council. The defendant had known since the first of June 1939 that there would be a vacancy in one of the lieutenancies on July 1st following. He knew of the examinations, and on June 28, 1939, went to the secretary of the civil service commission, to learn, if he could, their results. Although Herman had not then taken his adaptability test, the secretary told defendant that he thought there would be no change in his rating, and he gave defendant a list of the highest ten which corresponded exactly with the list certified on July 7th following. The plaintiffs had no knowledge of the standings until after the certification.

The defendant had taken his office on April 4, 1938, and prior to that time had had no connection with the fire department in any capacity, and did not know much about the ranking or discipline of the men. He had some personal acquaintance with Herman, Koppen, and Corcoran through other associations some years previous.

Herman became a member of the fire department in 1921, and Koppen and Corcoran became members in 1922, and their memberships had been continuous. They were all of the same rank and were members in good standing, and the civil service commission had given them the same service rating. On June 28th or 29th the defendant interviewed the chief of that department, who had held that position for 50 years. Defendant left the list of ten with him, and the chief and his assistant discussed the merits of the men, and June 30th, the three of them agreed upon Corcoran as the best qualified of the ten. On July 1st the defendant promoted Corcoran to the office of lieutenant, and on July 3d the council approved the appointment. Because all of this action had taken place before the certification and posting of the list on July 7th, they reappointed Corcoran on August 1, 1939, and secured the reapproval of the appointment. When the plaintiffs first became members of the fire de-

partment their applications stated that they were honorably discharged soldiers of the United States. About July 1st, and before they knew their standings in the examination, Herman and Koppen had talked with defendant about the promotion. Herman at this time told him of his service in the army. He also discussed with the defendant the fact that he was an ex-service man during the year previous.

Plaintiffs in their petition allege many of the facts herein set out and base their right to the relief prayed for not only upon their superior standings as certified by the civil service commission under chapter 289 of the Code, but also under the provisions of that chapter and those of chapter 60 of the Code, giving them preferential rights as honorably discharged soldiers of the United States. As required by statute the action was tried as an equitable one.

Plaintiffs introduced in evidence as an exhibit a report of the civil service commission giving the standings of Herman, Koppen, and Corcoran in the examinations. In substance it is as follows:

| | Written grade | Oral grade | Written grade 60% | Oral grade 20% | Service Record | Final Average |
|---|---|---|---|---|---|---|
| Corcoran | 73.0 | 81.7 | 43.8 | 16.34 | 20.0 | 80.14 |
| Herman | 84.0 | 86.7 | 50.4 | 17.34 | 20.0 | 87.74 |
| Koppen | 85.0 | 80.0 | 51.0 | 16.00 | 20.0 | 87.00 |

Other evidence was introduced on both sides supporting the fact statements herein stated. The court, by its judgment, found generally in support of plaintiffs' allegations, and that the examinations were held with the results as stated; that Herman and Koppen, under chapters 60 and 289 of the Code, were both entitled to preference in said appointment over Corcoran "and over all other persons certified on said eligibility list of equal or lower rating on said list;" that the appointment and reappointment of Corcoran were illegal and contrary to law, and that it was the duty of the defendant to forthwith cancel and revoke his appointment, and to appoint and promote to the office and rank of lieutenant of the fire department either

Herman or Koppen. A writ of mandamus was ordered and adjudged to be issued to carry into effect these findings.

On this appeal the appellant has urged propositions for reversal which were also raised by him in his motion to dismiss appellees' petition, and in his answer thereto.

The case is one of first impression in this court, and we find but little authority elsewhere that is directly in point.

■■ Appellant urges that under section 1161 of the Code, the defendant, as the appointing power, was required to make an investigation as to the fitness of the applicants, and that since he made a good faith investigation, the court had no right to interfere by mandamus with his discretionary appointment. His argument would be more applicable if the appellees were basing their claim for relief solely upon the provisions of Code chapter 60. But they bottom their action also upon the provisions of Code chapter 289. He cites in support of his position our late case of McLaughlin v. Board of Supervisors, 227 Iowa 267, 288 N. W. 74. In that case the action of a board of supervisors was complained of. It was strictly a soldiers preference case without any element of civil service involved. In that and like cases the burden is wholly upon the appointing power to make the investigation. In the case before us the legislature has placed that burden and duty upon a civil service commission, which, under rules that it is authorized to prescribe, is required to ascertain by examinations practical in character and pertaining to such matters as will fairly test the relative ability of the applicants to discharge the duties of the position to which they seek promotion. This examination included an adaptability test to ascertain, as far as possible from their appearance, manner, and temperament, their fitness for the particular job. It is true that the commission has no power to appoint, but it has the power to determine which of the applicants have qualifications making them eligible to appointment, and to list them in the order of merit as indicated by their percentage standings. The power of appointment rests in the department or office having the position sought, but the choice of appointees is limited to the list furnished by the com-

mission. The choice of the appointing power in this case in making a selection from the list of ten is further limited by the fact that three of the listed applicants are honorably discharged members of the army and navy of the United States. Code section 5697, of the civil service chapter, is as follows:

"Preferences. In all examinations and appointments under the provisions of this chapter, honorably discharged soldiers, sailors, or marines of the regular or volunteer army or navy of the United States shall be given the preference, if otherwise qualified."

This provision is mandatory. In this instance the commission found the appellees not only "otherwise qualified", but better qualified than the appointee, Corcoran, and six others on the certified list. Such a finding by the commission cannot be nullified by an appointment of the defendant based solely upon the bare opinion of the chief and assistant chief of the fire department, or of others, that Corcoran was the best qualified. Even though it might be contended that all of the ten certified were to be considered of equal rank this would not entitle Corcoran to the appointment, as he would have to be *better qualified* to be so entitled. (Italics ours.)

The civil service acts of most of the states contain provisions similar to the Iowa Code, section 5697. It is a recognition of and a slight recompense for the services performed and the sacrifices suffered by these men. It is also a legislative appreciation that these men by their service under arms have acquired those habits of industry, obedience, and fidelity so necessary as qualifications for any public office or service in times of peace. Quite applicable to the present case are these words of the California court in Cook v. Mason, 103 Cal. App. 6, 11, 283 P. 891, 893:

"It is a matter of common knowledge that a person who enlists in the army or navy, or who is accepted in such service, either in war or peace times, has first to undergo tests and examinations as to his physical and mental fitness for such

service, and that after his acceptance he is subjected to vigorous training which instills habits of industry, sobriety, obedience, and fortitude that are of recognized advantage in such employment as a member of the city fire department.''

In 10 Am. Jur. 927, 928, section 9, the author states:

'' * * * the courts are generally agreed that as between persons equally qualified to perform the duties of an office, a lawful preference may be given veterans, and statutes providing that veterans who pass the civil service examinations shall be preferred in appointment have been generally upheld * * *.'' (Citing cases.)

In construing a constitutional provision that veterans are entitled to preference ''in appointment and promotion without regard to their standing on any list'', the New York Court of Appeals, in In re Keymer, 148 N. Y. 219, 225, 42 N. E. 667, 668, 35 L. R. A. 447, said:

'' * * *; but when, as a result of those examinations, a list is made up from which appointments and promotions can be made, consisting of those whose merit and fitness have been duly ascertained, then the veteran is entitled to preference without regard to his standing on that list.''

We have no such constitutional or definite legislative provision in this state, and although the language of section 5697 is broad, we are not required to hold that the service man is entitled to preferential appointment regardless of his position on the list, and we do not so hold, since in the case before us both of the appellees stood ahead of the appointee in the list. Other authorities which touch somewhat on this and kindred questions are 5 R. C. L. 608 et seq.; State ex rel. Buell v. Frear, 146 Wis. 291, 302, 131 N. W. 832, 34 L. R. A., N. S., 480; People ex rel. Balcom v. Mosher, 163 N. Y. 32, 57 N. E. 88, 79 Am. St. Rep. 552; Jenkins v. Gronen, 98 Wash. 128, 167 P. 916, L. R. A. 1918A, 839; Timmins v. Civil Service Com., 276 Mass. 142, 177 N. E. 1, 75 A. L. R. 1232; State ex rel. Raines v. Seattle, 134

Wash. 360, 235 P. 968; 43 C. J. 608 et seq.; State ex rel. Chapman v. Lesser, 94 Ohio St. 387, 115 N. E. 33; Sloat v. Board of Examiners, 274 N. Y. 367, 9 N. E. 2d 12, 112 A. L. R. 660.

█ Some question has been raised by the appellant as to the right to proceed by mandamus rather than by appeal to the civil service commission. Section 5704 et seq. do not seem applicable to this situation, and section 5711 is not entirely clear. But whether applicable or not we hold that the appellees, being within the purview of chapter 60 of the Code, are entitled to the remedies therein provided.

█ The appellant also insists that the appellees never made known that they were claiming any rights of preference as veterans or ex-service men. The notice of the examination of April 8, 1939, did not call for any application or preliminary steps prior to the examination. The men were simply to appear for examination. Their record as honorably discharged soldiers was on file in the department. The defendant testified that he knew they were such service men and gave that fact consideration. Sections 1159 and 5697 state that this fact shall be given consideration. Herman spoke to the defendant about being a service man. We hold that the defendant was fully aware that the men were claiming consideration as honorably discharged soldiers. Of a similar situation Chief Justice Parker of the New York Court of Appeals, in Stutzbach v. Coler, 168 N. Y. 416, 419, 61 N. E. 697, said:

"He had, however, served in the Union army during the war of the rebellion, and was an honorably discharged soldier, of which fact the comptroller was in ignorance, but the relator contends in this proceeding, and rightly as we think, that if under the law of the state he was entitled to be continued in employment as against other employees in his bureau who were not veterans, the fact that the comptroller was not advised of his right to preference does not deprive him of the right which the law affords him, for it is the fact of his being an honorably discharged soldier which entitles him to preference in employ-

838

ment and not knowledge of that fact by the head of the department employing him.''

See also People ex rel. Hamilton v. Stratton, 80 N. Y. S. 269.

Appellant also contends that a soldiers preference does not apply to promotions under civil service. There is no merit in this. Section 1159 expressly refers to promotions. Section 5696.1 refers to ''promotional examinations'', and section 5697, in providing for preferences, expressly includes ''all examinations.''

The purpose of civil service legislation was to get away from the evils of the spoils system, political considerations, and favoritism in appointments to public service, and to secure efficiency in that service by establishing a merit system in which eligibility to appointment is based on fitness for service in so far as it can be obtained. Efficiency departs when laxity in the enforcement of civil service legislation is permitted to prevail.

We fully agree with the trial court in its judgment and it is hereby affirmed.—Affirmed.

RICHARDS, C. J., and STIGER, HAMILTON, MITCHELL, SAGER, HALE, and MILLER, JJ., concur.